Good morning, your honors and counsel. May it please the court. My name is Kevin A. Gregg and I represent the petitioner in this matter, Luis Antonio Amaya-Pineda. I respectfully request to reserve two minutes for rebuttal. Manage your own time. Thank you, your honor. This case is primarily about the nexus analysis required of asylum and withholding of removal. Respondents do not contest that petitioner testified credibly and corroborated his case, that he is a member of a cognizable family-based particular social group. Respondents also don't contest the petitioner's brother was murdered in El Salvador by the 18th Street Gang, that the gang then targeted his sister and that when she fled, they targeted the petitioner beginning when he was only 11 years old. Respondents don't contest that the gang made multiple death threats against him and the family, that they violently attacked him, put a gun to his head, forced him to pay extortion, and ultimately required his flight to the United States. That is not before the court, your honor. We respectfully urge the court to grant this petition for four reasons. First, the BIA was wrong. The record shows that one central reason and certainly a reason for the persecution petitioner suffered was on account of his family membership. Second, the BIA erred in reviewing the immigration judge's nexus finding for clear error rather than de novo. Third, the IJ and the BIA conducted the wrong nexus analysis for withholding of removal specifically. And fourth, the record shows that the Salvadoran government did and will be willfully blind to the torture petitioner suffered and fears. And first, addressing nexus, your honors. Despite recognizing that family membership had a role to play in the persecution, the agency believed that the 18th Street Gang did all this primarily because they wanted money. But that analysis misses the point. Wanting money and persecuting a family are not mutually exclusive. The court recently recognized in Garcia v. Wilkinson that persecutors often have dual goals, and that asylum law permits this. Petitioner was only threatened and beaten after the gang killed his brother. The immigration judge and the BIA recognized this, and it started when he was 11. Like in Garcia, the gang continued to target the family and followed them to the brother's funeral, an event that the Garcia court called a uniquely family affair. Petitioner's father had passed away at the time the brother was murdered. His older sister had been targeted and fled to the U.S., and so the gang turned to the petitioner, the next family option. The record shows that the gang knew about the family, knew that they were respected in town, knew that the petitioner's sisters lived in the United States, the BIA recognized this, and so targeted the petitioner as the family's representative. I'm a little unclear as to what you say was their motive to targeting the family other than to get money or the alternative was to join the gang. What other motive was involved? The gang indeed wanted the family to pay extortion or have the family members join the gang. Under this court's precedent, extortion itself, especially when combined with concrete threats, can be itself persecution. No, I agree. I understand that argument, but you had said you made a different argument. You said that if there are multiple motives and only one is gaining money, then you could still prevail. You know, on that prong of your argument, what was the alternative motive? The family is targeted because of the family, because of the family, because the family is respected in town, and once the brother is murdered, the family... Wait, but the evidence is not that they're targeted because they're respected in town. It's because they have, they're believed to be able to have the money to pay the rent, and your client was unharmed when he paid the rent, correct? And he said that the reason his pay the rent or join the gang. Yes, Your Honor, and being targeted because the sisters are in the United States and can pay rent additionally shows that the family is specifically being targeted and not some other family who might not have been able to pay is being targeted. This court's precedent doesn't require that the gang hate the family, but only that they are targeted because they are a family and that this family is targeted and not some other family instead. To satisfy the one central reason standard, there can be financial motives. The Garcia decision states that, but so long as family membership, it need not even be the most dominant reason. It can still satisfy the one central reason standard. The evidence shows that the gang said that they were going to kill the petitioner like they killed his brother. On multiple occasions, they threatened to do so. They surrounded the house and threatened to kill the family. And today, the petitioner's youngest brother is being extorted just like the older brother, just like the petitioner. It's all continuing because this family continues to be targeted. And again, just like in Garcia, they came to that funeral. They know what's happening and they are targeting this family. Your Honor, the respondents are arguing that the petitioner possibly avoided all of this by paying extortion or joining the gang. But as I mentioned, extortion in this circuit can equate itself to persecution. But more broadly, asylum does not require non-citizens to join gangs or to pay extortions to remain alive. Moving on that issue, Your Honor, and relatedly, the BIA reviewed the immigration judge's nexus finding under the incorrect standard of review last month post-briefing in Omana Escobar, as mentioned in our 28-J letter. The Ninth Circuit held that the BIA must review de novo. Let me ask you a question. You would agree that there's a lot of Ninth Circuit case law that if Mr. Amaya Pineda had been living in the United States, or let's say the sister, the sisters living in the United States, the city were to file an asylum or withholding of removal application, and if they were to say my particular social group is that I am returning from the United States and I'm viewed as wealthy, there's ample case law that says that is not a cognizable particular social group, correct? Yes, Your Honor. You would agree with that, right? Yes, Your Honor. I believe that there's some might support it, but the immigration judge found this particular social group cognizable. With respect to... I'm sorry, go ahead. No, I'm sorry. I'm done, Your Honor. I wanted to shift to your cat argument. What's the evidence that the government ignored and acquiesced in this misconduct? We believe that the evidence in totality shows that the government was willfully blind. There's a 20-year period beginning with the brother's own targeting and murder in which the police in town are not doing anything. The mother reports the brother's murder, and the gang can still follow them to the murder. The mother reports the beating of the petitioner with a gun to his head, and the police actually arrest some of the individuals, as respondents point out, but then they just let them go. We would put forth, Your Honor, that that is worse than actually doing nothing. It shows the police do not care, that they are willing to do nothing, and that they are indicating to the town that nothing is going to happen when things like this occur. Again, 20 years on petitioner's family. The record additionally supports with country-conditioned evidence from the congressional record and the Department of State unsighted to by the BIA or the immigration judge showing that the police in El Salvador are corrupt, that they make payments to gangs, that they, in many instances, engage in unlawful killings themselves. In addition to that, Your Honor, there is precedent in this court, such as J.R.B. Barr and unpublished decisions in which this court is recognizing instances where, in El Salvador, during this time period, police acquiesce to gang violence under the Attorney General's own decision, a matter of OFAS. It only takes one corrupt police officer to acquiesce, to be willfully blind, to satisfy the government actor wrong, and so we do believe in totality that is met here. You're down to about a minute and a half. Do you want to reserve? Yes, Your Honor, I would like to reserve, and I did not get to two of the other arguments, but they are specified in reply and in the 20HA letter. Thank you, Your Honor. We'll hear from the United States. Good morning, Your Honors. Karen Melnick, on behalf of the United States. With respect to the three arguments raised for the first time by Petitioner in his reply brief, the government would argue that the court should not entertain any of those issues with respect to the board's and the IJ's decision. His opportunity to address the immigration judge's decision was to the board. He failed to do that. If he had any issue with the board's decision, his opportunity to address those issues were in his opening brief, and he failed to do that. This court has long held that it would not entertain issues raised for the first time in a reply brief, and that is the case here with respect to those issues. Moving on to the nexus issue. The gang's motive, first and last, was money. Was this family a victim of this? Yes. The brother's death occurred some decades before this petitioner's experience with the support of the family. Money. They gave him a choice, join us or pay, and he chose to pay. Nothing happened to him while he made those payments. It's only when he stopped paying that he was assaulted. Their motivation was money. It was money just like it was for his friend that got killed. His friend's obviously not a part of his family. The motivation there is money. The motivation for those 20 some odd people that he left the country with, what did he say about that? He said they left for the same reason, because they didn't want to pay or couldn't pay the rent. So whether the family had members in the U.S. or were farmers or business people, it doesn't matter where the money was coming from. It's just that they either wanted him, a young male, or they wanted to be paid. And that's the unfortunate circumstance of this and probably thousands of other families in the country. It doesn't make his family any, it doesn't make them unique. But the gang here explicitly said they were targeting because he had family living in the U.S., right? Well, they said that, but they also even before that were targeting him because he was earning money in addition to going to school. Yeah, they were aware that there might be a source of income, a greater source of money for them. Um, but that doesn't make it a reason why they were targeting him. I mean, so long as he was, um, again, paying them or they were willing to accept him, just him participating in the gang, nothing to do with family members in the United States. They were just wanted either their numbers to increase to help them or they wanted his money. So the fact that he, um, had members, family members living in the United States was working, um, on the side earning money, you know, at bottom, whether, you know, it, it wasn't, his family wasn't essential. Why isn't it enough if the gang members explicit statements that they're targeting him because he family in the U.S.? Why, why isn't that enough? At least in part, it's on a protected ground. The BIA assumed that this was a cognizable particular social group. You know, if, if extrapolated, as I said, um, it would mean that everyone would be protected, right? Because if say, you know, well, we're targeting you because your family owns a business. Well, then every family that owns a business, um, that's the on account of, or again, any, um, occupation they might have or, you know, any circumstance which generates money. Um, we would suggest that that's the reason that this case is unfortunately not like so many others this court has seen where the gang's motivation is money. And that's what it was, um, throughout, when his friend couldn't pay again, um, he was killed. Um, again, these are, um, certainly sympathetic circumstances for so many. Um, but that doesn't change the motive for the crime here. And that is their recruitment. And that's what this is. It's sort of partial recruitment. And when he refused to be recruited, he paid. And so long as he was paying, he was fine. There's no evidence that he was harmed in any way. Um, so long as he was paying, it's a, it's certainly a horrible, uh, you know, choice, uh, to be made, but that's at bottom what it is. And again, that's, that was the motivation. Um, you know, hypothetical. So supposing, um, the, they initially gone after him or other members of his family for money, and then they had reached the conclusion that this particular family was recalcitrant and they would really have to, uh, uh, resort to extreme measures like killing his sister and killing his cousin. Um, and they, and they're going to do it to any member of his family in order to bring that pressure. You're saying still, since their ultimate motive was is not enough. You know, again, it's difficult, um, to speculate. Um, I hate to do that with hypotheticals, but I understand your honor's point. Um, you know, I would think, I think, Socrates used to engage in occasional hypothetical. So I'm going to take the liberty of doing so as well. Fine. Um, I think a lot of it might have to may, you know, again, facts we don't know, timing again, this, um, his brother was killed in 2002 and we're talking about events in 2015, one event that occurred in 2015. Um, so I think it's difficult for me to answer that question with respect to, um, uh, the facts that your honor presents. You know, I think that, and I think the country conditions do bear this out. I mean, um, extortion is a money generating economic engine, um, for the gangs. And I, I don't think that, um, not in this case, certainly that families are targeted because they are a family. Council referred to them being, you know, respected in the community. I, I, I saw one piece of testimony from petitioner that he did well in school and he was well liked. Um, but I don't think that this, um, family is, um, known in a, in a way that makes them, um, any different again from his friend's family, uh, that was killed or from those 20 other people that escaped, um, or left the country with him for the same exact reason that he was leaving. Um, again, yes, it's the, it's the respondent's position that, you know, money is the motivator. Um, it is the reason. So how are we supposed to think about if the sister in the U.S. were to say, my particular social group is people returning from the United States who are perceived as wealthy. There's ample Ninth Circuit case law that says that's not a cognizable particular social group. Um, but how are we to take into account in this case of family, which, you know, can be recognized as a particular social group was a reason why the gang members said they were targeting him, even if ultimately the motive was money. How are we supposed to reconcile those two? Well, I, you know, I, it's, it's a little apples and oranges just because cognizable social group, um, you know, as your honors know, deal with, um, particularity and, um, social distinction. And of course the reason why, um, uh, folks coming back from the United States perceived as wealthy is not a particular social group because it's too amorphous and it involves, you know, young, old, um, uh, it it's too amorphous to, um, be identified as any group that the society back in the home country will say El Salvador for these purposes would recognize. Um, that's a little different from, um, this case where, um, you know, it's hinges completely on nexus because the, um, agency did recognize for purposes of this case that family is a cognizable social group. Any further questions? Thank you for your argument. I'm sorry. I, did you want to say anything about the cat? Um, only that the fact that, well, two things, one, there was, um, a police report, there was an investigation, there was arrests. Um, even though they ultimately weren't brought to justice, we don't know why. I mean, we know that, uh, the petitioner left the country that might've played a factor and simply because, um, and also that corruption, there's no evidence that corruption paid, played any part in this particular case. Um, so there's no, um, nothing compels reversal of the denial in this case. Although I like your corruption paid, that's a great Freudian slip. Well, in the, in this context, this case is a little stronger than many we've seen where they don't, uh, they don't report the crime here. Here they didn't report the crime and, uh, there was not a successful prosecution. So it's a little stronger than most cases we see. Yes, Your Honor. Okay. For the reasons, for the reasons we summarized in our, um, our brief and arguments today, we'd ask that, uh, Your Honor's deny the petition for review. Thank you. We'll hear rebuttal. I'll give you two minutes. Thank you, Your Honor. Thank you, Your Honor. And thank you, counsel. Addressing first exhaustion, um, all arguments were made to the Board of Immigration Appeals and to the extent any were not, um, the difference between a reason, one central reason, the BIA clearly conducted that analysis. So it is properly before the court as to making arguments in reply or in a 28-J letter focusing on the standard of review for nexus that becomes a cognizable argument after this court's decision in Umana, which is the basis for the 28-J letter and which was, Umana Escobar was published after the reply, um, was filed in this case. In, in Umana Escobar, the Ninth Circuit did not cite to any prior Ninth Circuit precedent for its holding. So it was a new holding in the Ninth Circuit. The BIA clearly reviewed the, the immigration judge's nexus analysis for clear error review. Umana Escobar makes very clear that it was supposed to do so and for that reason alone, we would request a remand. As to some of the comments that respondent made regards the facts of this case, um, the sister was before, the sister was first, the sister was targeted before the petitioner. The petitioner was targeted at 11 years old. There's not this big gap. It's in 2003, right after the brother is murdered in 2002. And it's not initially for extortion. He's an 11 year old. It's for join, join us or die. And that is what respondents were arguing, but join us or pay or die is a choice of persecution or persecution. And that is not a proper reason under this court's precedent to deny, to deny an asylum case. Like in Garcia, they show up at the funeral. They are targeting this family specifically. I believe that Judge Rackoff's hypothetical is right on the mark, but that is what's happening. And that is to answer Judge Koh's question that a non-cognizable reason can turn into a cognizable one when they are doing it because they are a family unit. Um, if there are no further questions, my two minutes is up. Thank you very much, Your Honors, for considering this case. We would just, we would urge granted petition. Thank you for your arguments this morning. The case just heard will be submitted for decision and will be in recess for the morning. We have some students here. You can't see them, Counsel, but we will come back and address you and then after conferencing. But in the meantime, we have our law clerks who can answer a few questions for you. So we will be back shortly and thank you, Counsel. Thank you. Rise.
judges: THOMAS, KOH, Rakoff